UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Red River Freethinkers, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No.  3:08-cv-32 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Fargo, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Red River Freethinkers ("Freethinkers") alleges a monument displaying the Ten Commandments, which is situated on land owned by the City of Fargo, violates the Establishment Clause of the First Amendment.  The City has moved to dismiss plaintiff's complaint for lack of standing.

## Summary of Recommendation

Plaintiff has not met its burden of establishing that it has standing to challenge the constitutionality of the City of Fargo's reversal of its decision to move the Ten Commandments monument to private property and the City's adoption of an initiated ordinance effectively prohibiting removal of the monument.  Defendant's motion to dismiss (Doc. # 24), converted to a motion for summary judgment (*See* Notice and Order, Doc. # 37), should be **GRANTED** and plaintiff's complaint should be **DISMISSED.**

## Factual Background

This case involves the same monument that was the subject of *Twombly v. City of Fargo*, Case No. A3-02-137, which this court dismissed in a grant of summary judgment in September 2005.  *Twombly*, 288 F.Supp.2d 983 (D.N.D. 2005).  The monument was donated to the City by

the Fraternal Order of Eagles in 1958. It was stored for a time and then in 1961was placed in a civic plaza surrounded by the Fargo Civic Auditorium, the Fargo Public Library and Fargo City Hall. The monument stood unchallenged for over 40 years, until five individuals, all members of plaintiff Red River Freethinkers, challenged its constitutionality under the Establishment Clause. Freethinkers is "composed of members whose view of the supernatural is atheistic and agnostic." *Id.* at 986 (quoting stipulated Statement of Facts). In dismissing the members' complaint in *Twombly,* this court held the monument did not violate the Establishment Clause, specifically finding that "the monument sends a clear secular message concurrent with the obvious religious one." *Id.* at 991. Further, the court found contextual support for its ruling in the physical location of the monument and the number of years it stood without controversy. No appeal was taken from the court's ruling.

In March 2007 Freethinkers submitted a proposal to the City to sponsor and donate a "sister" monument to be placed near the Ten Commandments monument. (Copy of Sister Monument Offer Submitted to City, Exhibit 1 to Affidavit of Carol Sawicki, Doc. # 38-1). The proposed monument would display the following inscription:

THE GOVERNMENT OF THE

UNITED STATES OF AMERICA

IS NOT, IN ANY SENSE

FOUNDED ON THE CHRISTIAN RELIGION

FROM THE TREATY OF TRIPOLI, APPROVED
UNANIMOUSLY BY THE UNITED STATES SENATE,
JUNE 7, 1797.
SIGNED BY PRESIDENT JOHN ADAMS

The dedication language on the monument was proposed as follows:

> PRESENTED TO THE CITY OF FARGO BY THE RED RIVER FREETHINKERS
> IN RECOGNITION OF THE FIRST AMENDMENT RIGHT OF EVERY AMERICAN
> TO BELIEVE, OR NOT BELIEVE, IN ANY GOD
> [Dedication Date]

(First Amended Complaint, ¶¶ 12 & 13, Doc. # 22).

The City Commission referred the Freethinkers' proposal to the City Attorney and City staff for consideration and recommendation. (City Commission Minutes for 3-26-07, Exhibit A to Affidavit of Robin Wolpert, Doc. # 25-2). At the June 18, 2007 Commission meeting, the City Attorney reported that the Freethinkers preferred that the City accept their proposal to donate a sister monument, but if the City would move the Ten Commandments monument to private property, the Freethinkers indicated their monument would not be needed. The Commission then voted to take the following three actions: (1) to decline to accept the Freethinkers' proposed donation of a sister monument, (2) to donate the Ten Commandments monument to a private entity so it could be relocated to private land, and (3) to receive proposals for such relocation, for consideration at the Commission meeting on July 16, 2007. (City Commission Minutes for 6-18-07, Exhibit B to Affidavit of Robin Wolpert, Doc. # 25-3; Video of June 18, 2007 City Commission Meeting, Exhibit 2 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).

Within a few days after this City Commission meeting some Fargo residents held a rally to collect signatures on a petition calling for the following initiated ordinance to be submitted by the City for vote of the electorate:

> A marker or monument on City of Fargo property for 40 or more years may not be removed from its location on City of Fargo property.

(Copy of Petitions, Exhibit 4 to Affidavit of Carol Sawicki, Docs. # 25-3 through 25-8; See also Video of Petition Drive, Exhibit 7 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).  The only monument on City of Fargo property to which the proposed initiated ordinance would apply was the Ten Commandments monument.  Supporters of the measure collected over 5200 signatures, twice as many as necessary to qualify the initiated ordinance for placement on the ballot.  (Video of July 2, 2007 City Commission Meeting, Exhibit 8 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).

At its July 2, 2007 meeting, after hearing from a number of proponents and opponents of the petition, the City Commission decided to enact an ordinance containing the same language as presented in the petition.[1]  This action negated any need to submit the measure to a vote of the electorate at the next general election, which election would not have occurred until nearly a year later.  (City Commission Minutes for 7-2-07, Exhibit C to Affidavit of Robin Wolpert, Doc. # 25-4; Video of July 2, 2007 City Commission Meeting, Exhibit 8 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).   The first reading of the ordinance occurred at that meeting, subject to verification of the signatures on the petition.  *Id.*  At the same meeting, the City Commission reconsidered and reversed its earlier decision to relocate the monument to private property.  *Id.*  The Commission also tabled Freethinkers' renewed request to display a sister monument. *Id.*

---

[1] Article 4 of the City of Fargo's Home Rule Charter provides: "If the governing body refuses to enact an initiated ordinance, . . . the proposal shall be submitted to the voters for approval or rejection." (Home Rule Charter, Exhibit D to Affidavit of Robin Wolpert, Doc. # 25-5).

The second reading of the ordinance occurred at the July 16, 2007 Commission meeting, (City Commission Minutes for 7-16-07, Exhibit E to Affidavit of Robin Wolpert, Doc. # 25-6), and the ordinance received final adoption at the July 30, 2007 meeting and became Section 18-0514 of the Fargo Municipal Code. (City Commission Minutes for 7-30-07, Exhibit F to Affidavit of Robin Wolpert, Doc. # 25-7). On August 27, 2007, the Commission voted to adopt a policy of accepting no additional monuments to be placed on the civic plaza where the Ten Commandments monument is displayed. (City Commission Minutes for 8-27-07, Exhibit G to Affidavit of Robin Wolpert, Doc. # 25-8). This action effectively denied reconsideration of the earlier negative vote on the Freethinkers' proposed monument.

The Freethinkers initiated this action on April 18, 2008, challenging under both the Free Speech Clause and the Establishment Clause of the First Amendment the City's refusal to accept the proposed "sister" monument and the adoption of the ordinance retaining the Ten Commandments monument. After the United States Supreme Court decided in *Pleasant Grove City v. Summum*, __ U.S. __, 129 S.Ct. 1125 (2009), that a city's rejection of a proposed monument is not subject to scrutiny under the Free Speech Clause, the Freethinkers amended their complaint to eliminate their Free Speech claim. The City then moved to dismiss for lack of standing. Since the City submitted factual materials outside the pleadings in support of its motion, the court gave notice under Federal Rule of Civil Procedure 12(d) that it would treat the motion as one for summary judgment. The court gave plaintiff an opportunity to supplement the record with affidavits or other factual support, and plaintiff did submit such materials.

**Requirements for Standing**

In order to meet the "case-or-controversy" requirement of Article III of the Constitution, a party seeking to invoke federal court jurisdiction must have standing to bring the suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is comprised of three elements, which the plaintiff has the burden to show: (1) an "injury in fact," which means infringement of a legally protected interest that is both "concrete and particularized to the named plaintiff," and "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) a causal connection between the injury and the infringing conduct; and (3) redressability, which means the relief the court may afford is likely to alleviate the injury. *Id.* at 560-561 (citations omitted). The burden to establish standing is more than a pleading requirement; it is part of the plaintiff's burden of proof, requiring the same degree of proof as any other element in the case. *Id.* at 561.

An organization asserting a claim has standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 419 (8th Cir. 2007), quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The existence of facts necessary to establish standing is determined on the entire record before the court. When a motion to dismiss is unaccompanied by any factual materials outside the complaint, the determination is made with reference only to the complaint. But, when the issue of standing is presented through a motion for summary judgment supported by factual materials, the plaintiff may not rest on "mere allegations," but must present affidavits or other

evidence setting forth "specific facts" to establish all three elements of standing. *Defenders of Wildlife*, 504 U.S. at 561. Since the City submitted factual materials with its motion to dismiss, this court gave notice that it would treat the motion as one for summary judgment and gave plaintiff an opportunity to submit factual materials. (Notice and Order, Doc. # 37). Plaintiff has supplemented the record with factual materials. The court must now address the issue of standing not merely with reference to the allegations of plaintiff's complaint, but also in the context of the factual record before the court.

## Injury

In its Amended Complaint plaintiff describes its injury as its members' "feelings of exclusion, discomfort, and anger" suffered as a result of "unwanted contact with the Ten Commandments monument," together with plaintiff's and its members' subjection to "ridicule and inflammatory, derogatory public comments which have injured their respective reputations" as a result of their opposition to the continued presence of the Ten Commandments monument. (First Amended Complaint, ¶ 22, Doc. # 22). The Amended Complaint alleges the City's adoption of the initiated ordinance caused "new injury" to plaintiff and its members "by magnifying the feelings of exclusion, discomfort, and anger caused by the original presence of the Ten Commandments monument on City property and by verifying the validity of those feelings." (First Amended Complaint, ¶ 23, Doc. # 22). Plaintiff also alleges taxpayer standing because its members' tax dollars "are expended to maintain the Ten Commandments monument." (First Amended Complaint, ¶ 22, Doc. # 22).[2]

---

[2] Neither party mentioned this allegation of taxpayer standing in its motion papers or at the motion hearing.

Although plaintiff complains about the "continued" presence of the Ten Commandments monument on City property, plaintiff appears to recognize that it cannot simply challenge the City's display of the monument on Establishment Clause grounds. Such a claim would merely reprise the *Twombly* case. Freethinkers, whose interests are identical to those of its individual members who served as plaintiffs in *Twombly*, is precluded by principles of res judicata and collateral estoppel from relitigating on Establishment Clause grounds the constitutionality of the display of the monument on City property. *Irving v. Dormire*, 586 F.3d 645, 647-648 (8th Cir. 2009). In order to determine whether Freethinkers may rely upon injury from continued presence of the Ten Commandments monument, the court must determine whether this case is "simply the same claim [as *Twombly*] repackaged," *Robbins v. Clarke*, 946 F.2d 1331, 1334 (8th Cir. 1991), or whether the actions of the City have given rise to a new claim for which Freethinkers has standing to prosecute.

To the extent the complaint alleges Freethinkers and its members have suffered injury by the "continued presence of the Ten Commandments monument which the new Section 18-0514, and the overtly religious motives behind it, perpetuates," (First Amended Complaint, ¶ 23, Doc. # 22), the complaint does simply repackage *Twombly*. Thus, a claim based on the mere continued presence of the monument and any religious message it has conveyed since its placement on City property almost 50 years ago is precluded by the decision in *Twombly*. *Irving,* 586 F.3d at 647-648; *Robbins*, 946 F.2d at 1334. Another development Freethinkers cannot claim as the basis for injury is the City's refusal to accept its offer of a "sister" monument and the City's adoption of a policy to accept no further monuments. Such a challenge was foreclosed by the Supreme Court's decision in *Pleasant Grove City v. Summum*, __ U.S. __, 129 S.Ct. 1125 (2009).

Instead, Freethinkers focuses on a "new injury" allegedly suffered through the City's adoption of the initiated ordinance and the reversal of its decision to move the Ten Commandments monument to private property, which allegedly "magnif[ied] its members' sense of exclusion and anger through its mandate of continued display of the Ten Commandments monument on City property." (First Amended Complaint, ¶¶ 23, 24, Doc. # 22). The court will examine Freethinkers' claim of injury by considering the effect of the City's challenged actions.

### Infringing Conduct/Causation

Plaintiff contends the City acted with an "overt religious purpose" in reversing its decision to move the Ten Commandments monument to private property and has "transformed" the previously constitutional display of a mixed secular and religious expression to one with an unconstitutional, religious purpose by adopting the initiated ordinance. (First Amended Complaint, ¶¶ 24, 27 and 28, Doc. # 22). At the hearing on the City's motion to dismiss, the magistrate judge inquired of plaintiff's counsel whether the claimed injury was caused by the continued presence of the Ten Commandments monument, by the City's adoption of the initiated ordinance, or by the process by which the ordinance was enacted. Counsel responded that all three have caused the claimed injury.

In pursuing its current challenge Freethinkers takes heart from the following language in the majority opinion in *Summum*:

> The message that a government entity conveys by allowing a monument to remain on its property may also be altered by the subsequent addition of other monuments in the same vicinity. . . .
>
> The "message" conveyed by a monument my change over time. . . .

*Summum*, __ U.S. __, 129 S.Ct. 1125 (2009). The theory of Freethinkers' case is that the

9

proponents of the initiated ordinance petition drive were motivated by religious purpose, and that the City, in adopting the ordinance as well as in changing its mind about moving the Ten Commandments monument to private property, approved of and embraced those religious motivations, thereby converting the Ten Commandments monument from a partially secular, permissible display to a solely religious, impermissible display.

The amended complaint alleges that "the intent behind the initiated ordinance was to force the adoption of a Christian religious symbol by the City and to retaliate against the Plaintiff herein because of the efforts of Plaintiff to have the Ten Commandments monument removed from City property." (Amended Complaint ¶ 25, Doc. # 22). While not expressly identifying whose intent Freethinkers contends was "behind" the ordinance, it is apparent the allegation refers to the promoters of the petition for initiated ordinance, and the complaint infers that the City Commission embraced that intent as its own by adopting the ordinance and thereby allegedly transforming the Ten Commandments monument "into a government expression of a religious purpose." (*Id.* at ¶ 27). None of these allegations allege any conduct by the City Commission as a body or by individual Commissioners, other than mere adoption of the ordinance. No evidence of the *City's* intent is alleged; only the petition proponents' religious intentions are alleged.

The Supreme Court recognized in *Summum* that "the intended and perceived significance of [the governing body's] conduct may not coincide with the thinking of the monument's donor or creator," and when there are multiple donors of a monument, "the donors themselves may differ in their interpretation of the monument's significance." *Summum*, 129 S.Ct. at 1136. Freethinkers' complaint assumes no such differences can or do exist. The complaint treats all proponents of the petition for initiated ordinance and the City Commissioners as monolithic in

10

holding and expressing a religious viewpoint.  Such a conclusory inference cannot provide the causation element of standing to assert an Establishment Clause claim against the City.

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court addressed the requirements of a well-pleaded complaint.  The plaintiff in *Iqbal* asserted a *Bivens* claim that his constitutional rights were infringed while he was held in federal custody.   In addressing whether the complaint was sufficient to survive a motion to dismiss for failure to state a claim, the Court held that a complaint must have "facial plausibility," *i.e.*, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.  Although the court must view all factual allegations of the complaint as true in deciding a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint that simply recites the elements of a cause of action or "pleads facts that are 'merely consistent with' a defendant's liability" does not present facial plausibility of entitlement to relief. *Id.* at 1949, *quoting Twombly*, 550 U.S. at 557.  Specifically, the Court found that to state an claim of constitutional deprivation the plaintiff in *Iqbal* "must plead sufficient factual matter to show that [the defendants] adopted and implemented the . . .  policies at issue not for a neutral, investigative reason but for [an unconstitutional] purpose . . .." *Id.* at 1948-1949.

Freethinkers' amended complaint asserts that, by adopting the initiated ordinance, the City adopted the alleged religious motivations of the petition promoters.  This conclusory assumption is not supported by any allegations of fact.  There are no allegations that would support the causation element of standing, such as, for instance, religiously charged comments made by City Commissioners in the course of the challenged events.  *See Green v. Haskell*

...

*County Bd of Comm'rs*, 568 F.3d 784, 792, 794, *rehearng en banc denied*, 574 F.3d 1235 (10th Cir. 2009) (County commissioners made religious comments in support of Ten Commandments monument and participated in supportive rally, which amounted to government endorsement of religion.). The allegations of the Freethinkers' complaint fall short of alleging that the City Commissioners themselves were motivated by religious purpose. Identity of purpose between the petition promoters and the City is at most possible, not plausible, under this complaint.

Further, the amended complaint's bald assertions that "the adoption of the initiated ordinance has transformed the Ten Commandments monument and the City's ownership of the Ten Commandments into a government expression of a religious purpose prohibited by *McCreary County v. A.C.L.U.*, [citation omitted]," (First Amended Complaint ¶ 27, Doc. # 22), and that "the Ten Commandments monument now has an unconstitutional religious purpose," (*Id. at ¶* 28), are legal conclusions not entitled to acceptance as truth without supporting factual allegations. These bootstrapped allegations are, at best, "merely consistent with" liability of the City, and the amended complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949, *quoting Twombly*, 550 U.S. at 557.

Finally, the alleged grievance stemming from reversal of the City's decision to consider proposals to move the monument does not support causation for purposes of standing. Before accepting any proposal to relocate the monument, the Commission reconsidered its vote and decided not to pursue such a move. All this vote did was to leave the monument in place, where it had stood for nearly 50 years. It did not bring back a monument that had already been removed. It did not add a new display to the monument. The City's decision to abandon its consideration of proposals to move the monument carried no constitutional significance.

Therefore, it cannot form the basis for the causation element of standing.

Even if the allegations of the complaint were sufficient, for purposes of standing, to allege that action of the City violated the Establishment Clause and caused injury to Freethinkers, the evidence of record does not support such allegations. The evidence submitted by Freethinkers includes a video of the rally held to garner support for the petition and video recordings of the City Commission meetings at which the Commissioners first decided to entertain proposals to move the Ten Commandments monument to private property, and then later reversed this decision and adopted the initiated ordinance. The City has submitted minutes of the relevant City Commission meetings.

The court notes that the video of the rally is hardly competent evidence of anything. The video consists primarily of a few individuals approaching the camera and making statements about their support of the Ten Commandments monument. There is no indication who filmed the video or whether the entire event was captured. The video of the petition rally and video of the July 2, 2007 City Commission meeting do demonstrate that some proponents of the petition for initiated ordinance were indeed motivated by religious purposes. But, other proponents cited different motivations, such as historical significance, in support of retaining the Ten Commandments monument on City property. *See* Video of July 2, 2007 City Commission Meeting, Exhibit 8 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41). Neither the videos nor the minutes show any expression of religious purpose or motivation by any of the City Commissioners. Rather, the evidence shows the Commissioners made specific

comments to the contrary.[3]  After an extensive review of the record the court can find no evidentiary support for Freethinkers' conclusory allegation that the City Commission engaged in impermissibly religious expression in its adoption of the ordinance and in reversing its decision to consider proposals to move the Ten Commandments monument to private property.  Freethinkers has not alleged or shown unconstitutional conduct by the City which caused injury to Freethinkers and its members.  Thus, plaintiff has failed to establish the second element of standing.

## Redressability

Plaintiff alleges its injuries and those of its members "are redressable because Plaintiff requests herein that this Court order the removal of the offending monument which necessitates a determination that the [initiated ordinance] is invalid."  (First Amended Complaint, ¶ 24, Doc. # 22).  The relief sought is a declaratory judgment that the initiated ordinance is unconstitutional as a violation of the Establishment Clause, an injunction requiring the City to remove the Ten

---

[3]At the June 18, 2007 City Commission meeting, Commissioner Coates stated, "Our Founders took great care not to provide a Jewish or a Christian foundation. . . . [I]t is not the role of government to proclaim one religion above others," and Commissioner Williams proclaimed, "I don't come down to City Hall to get my faith in God at a monument."  Video of June 18, 2007 City Commission Meeting, Exhibit 2 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).  At the July 2, 2007 meeting, Commissioner Mahoney referred to the debate over the Ten Commandments monument as "religious as well as emotional."  He noted, "[W]e have to be a city of tolerance of everything which comes before us. . . .  It is not the wishes of the people to move this monument for a variety of reasons, some of which are religious, some of which are emotional, and some of which are constitutional."  Video of July 2, 2007 City Commission Meeting, Exhibit 8 to Affidavit of Carol Sawicki, conventionally filed and noted at Doc. # 41).  Commissioner Wimmer added, "It's a piece of history. . . .  There was a diverse set of reasons that they signed these petitions, and I think being a piece of religion was just one small piece of the reason they signed that petition."  *Id.*  Finally, Mayor Walaker, in referring to Supreme Court jurisprudence on Ten Commandments monuments, stated, "If it was accepted in a religious context, it had to go.  If it was accepted not in a religious manner, it could stay."  *Id.*

Commandments monument from City property, an award of damages, and attorneys fees and costs.  Although plaintiff requests removal of the monument, that relief does not necessarily flow from the allegations in the amended complaint.   The actions of the City about which Freethinkers complains are the reversal of the City Commission's earlier decision to consider proposals to move the Ten Commandments monument and its adoption of an ordinance to leave the monument in place.  These actions did nothing to change the placement or the display of the monument.  It was situated on the Civic Center plaza long before these events occurred, and it continues to reside there.  The City's decision to abandon its consideration of proposals to move the monument is not redressable because the City's action was incomplete.  The court cannot stop the City from changing its mind before it has accepted a proposal, just as the court cannot force the City to accept a particular proposal.  *See generally Summumm,* 129 S.Ct. 1125.  If the ordinance had never been adopted, the monument would still be in place.  And, even if the court were to invalidate the ordinance, the City would be free to leave the monument in place or to move it, as it chose.  Invalidation of the ordinance would not require the court to enter an injunction for removal of the Ten Commandments monument from City property.  The Freethinkers' alleged injury, continued unwanted contact with the monument, is not redressed by removal of the ordinance, only by removal of the monument.  An action to force removal of the monument reprises the *Twombly* case, which plaintiff is barred from doing.  Freethinkers' alleged injury is not redressable by the available relief.  Therefore, plaintiff has failed to show its alleged injury is redressable by the relief the court could grant in this case.  Plaintiff lacks standing to pursue its claim against the City.

**Conclusion**

**IT IS RECOMMENDED** that defendant's motion to dismiss, converted to a motion for summary judgment under Rule 12(d), be **GRANTED** and plaintiff's complaint be **DISMISSED.**

**Notice of Right to Object**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.  Any other party may respond to an objection within seven (7) days thereafter.

Dated this 16th day of August, 2010.

                                                                           */S/     Karen K. Klein*
                                                                       Karen K. Klein
                                                                       United States Magistrate Judge